CHERYL A. EDGAR *vs.* CHARLES M. EDGAR.

Norfolk. November 8, 1988. — December 19, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Contempt. Notice,* Contempt proceeding. *Constitutional Law,* Equal protection of laws, Trial by jury. *Probate Court,* Jurisdiction, Notice.

In the circumstances of a divorce case, the former husband received adequate notice of a hearing on a complaint against him for criminal contempt. [617-618]

No State or Federal constitutional right to equal protection of the laws is violated by the lack of provision for a jury trial in a criminal contempt proceeding heard in a Probate Court. [618-620]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on March 18, 1983.

A proceeding for contempt, commenced on February 2, 1987, was heard by *David H. Kopelman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James B. Krasnoo* for Charles M. Edgar.

*John C. Ottenberg* for Cheryl A. Edgar.

NOLAN, J. Charles M. Edgar, the former husband of Cheryl A. Edgar, and the defendant in this case, argues two questions in this appeal: (1) whether the notice of a hearing on charges of criminal contempt against him was adequate under due process standards, and (2) whether denial of a jury trial at a hearing on charges of criminal contempt for failure to pay child support was a violation of his right to equal protection of the laws. We transferred the case to this court on our own motion. We conclude that the notice met due process standards and that, in these circumstances, he was not entitled to a jury trial.

On October 11, 1984, the plaintiff and the defendant were divorced on the ground of an irretrievable breakdown of their marriage. A separation agreement dated February 23, 1984,

was made a part of the judgment of divorce but it was not merged in the judgment. This agreement required the defendant to pay $200 per week for support of his minor children.

As a result of the defendant's failure to pay the agreed amount for child support, the plaintiff filed a complaint for contempt on October 17, 1986. Following a hearing on this complaint on November 12, 1986, the amount in arrears was established and a judgment for civil contempt was entered on November 17, 1986.

The defendant failed to pay this arrearage, and a new complaint for contempt was filed on February 2, 1987. The plaintiff and defendant appeared in court for a hearing on this complaint on March 5, 1987, at which time the defendant filed a motion to vacate the judgment of civil contempt entered on November 17, 1986. The motion was allowed.

The judge then announced that he would conduct a hearing on the complaint for contempt filed on February 2, 1987, and treat it as a complaint for criminal contempt. He had advised counsel for the defendant that the defendant would be incarcerated if he were found guilty.

Two hours later the hearing commenced, and the plaintiff's testimony at this time consisted entirely of evidence to establish the amount of the arrearage. The hearing was continued for a week to March 12, 1987. Further evidence bearing on the defendant's ability to pay was introduced at the March 12 hearing. The judge found the defendant guilty and sentenced him to imprisonment for thirty days. The defendant was in custody until April 2, 1987, when the balance of the sentence was suspended until further order of the court.

1. *Notice.* There is no doubt that the defendant was served with a copy of the complaint, which indicated that it could be treated as a complaint for either criminal contempt or civil contempt. Further, the only evidence adduced on the first day of the hearing was largely to document the amount of the arrearage. The defendant then had a whole week to prepare his case because the judge continued the case for this period. The defendant did not request any further time, nor did he

object to the date of the continued hearing. Therefore, the defendant will not be heard now to complain of lack of notice.

2. *Denial of jury trial.* In assessing the defendant's equal protection claim, this court has said that "our standard of review under the cognate provisions of the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution."[1] *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986). Whether we use the rational basis standard or the more compelling strict scrutiny standard, the result is the same in this case. See *Plyler* v. *Doe*, 457 U.S. 202, 216-217 & n.15 (1982), as to the application of the two standards.

There is no constitutional right to a jury trial in a criminal contempt proceeding in which the penalty is six months' imprisonment or less. See *Cheff* v. *Schnackenberg*, 384 U.S. 373, 379-380 (1966). The defendant concedes, as he must, the holding of *Cheff* and its progeny,[2] but he argues that, once a State has provided for a jury trial in some courts regardless of the length of the potential term of imprisonment, it must permit jury trials in all courts. If the defendant's case had arisen in the Superior Court, he would have the right to a jury trial; the Probate Courts, however, have no such provision.[3] Accordingly, the defendant argues that the failure of Mass. R. Crim. P. 44 (a), 378 Mass. 920 (1979), to provide a jury in the Probate Courts in cases of criminal contempt deprives him of equal protection of the laws. His argument fails if there is a

---

[1] There is nothing in the record to indicate that the defendant ever requested a jury trial, objected to a trial without jury in the Probate Court, or that he raised the issue for the trial court. "The general rule is that an issue not raised in the trial court cannot be argued for the first time on appeal." *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 67 (1982). The issue raised, therefore, is not properly before us. Nevertheless, because of the importance of the issue raised, we express our views. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

[2] See, e.g., *Muniz* v. *Hoffman*, 422 U.S. 454 (1975); *Frank* v. *United States*, 395 U.S. 147 (1969); *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216 (1968).

[3] Formerly, under G. L. c. 215, § 16, jury issues could be framed in the Probate Courts for trial in the Superior Court. However, § 16 was repealed by St. 1986, c. 211, § 1.

rational basis for the distinction which permits jury trials in some courts but not in others. See *Vance* v. *Bradley*, 440 U.S. 93, 97 (1979). In this instance, such a rational basis exists.

As this court implicitly recognized in both *Tetrault* v. *Bruscoe*, 398 Mass. 454, 457-459 (1986), and *Konstantopoulos* v. *Whately*, 384 Mass. 123, 127-128 (1981), subject matter jurisdiction among the various trial courts in Massachusetts is both conferred and limited by statute. The Probate Courts' jurisdiction is special and their cases are trenchantly different from those tried in the District and Superior Courts.[4] See *Konstantopoulos*, *supra* at 127 (despite breadth of jurisdictional grant in equity, Probate Courts remain courts of limited jurisdiction). As previously noted, there is no provision for a jury trial in the Probate Courts. Where distinctions in delineating the functions and powers of courts exist, concomitant distinctions in the procedural rules which apply to those courts are not, per se, unconstitutional. See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649-651 (1977) (no equal protection violation where statute requires medical malpractice victims, but not victims of other torts, to appear before malpractice tribunal).

In connection with legislation, this court has recognized reasonable classifications as surviving attack under equal protection claims. If the legislative classification is not "purely arbitrary," it does not create an "invidious discrimination" and therefore, does not violate the equal protection clause. See

---

[4] General Laws c. 215, § 3 (1986 ed.), provides that the Probate Courts shall have jurisdiction of "probate of wills, of granting administration on the estates of persons who at the time of their decease were inhabitants of or residents in their respective counties and of persons who die out of the commonwealth leaving estate to be administered within their respective counties; of the appointment of guardians and conservators; of all matters relative to the estates of such deceased persons and wards; of petitions for the adoption of children, and for change of names; or proceedings transferred to it under the provisions of section four A of chapter two hundred and eleven; and of such other matters as have been or may be placed within their jurisdiction. Whenever service of any notice, summons, citation, order or other process in any of the foregoing proceedings is ordered to be made by publication the names of the estates or parties to such proceedings shall be printed in bold type.

"Probate courts have exclusive original jurisdiction of actions for divorce or for affirming or annulling marriage."

*Begley* v. *Board of Appeal*, 349 Mass. 458, 460-461 (1965).
Such rationale applies equally to rules of court, and accordingly, for reasons already advanced, we are satisfied that nonapplication of rule 44 to parties in Probate Court proceedings is reasonable.

*Judgment affirmed.*