NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12440
SJC-12563


CAMBRIDGE STREET REALTY, LLC  vs.  MELINDA STEWART
(and a consolidated case[1]).


Suffolk.     September 7, 2018. - December 20, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Housing.  Summary Process, Notice to quit.  Jurisdiction,
    Housing Court, Summary process.  Housing Court,
    Jurisdiction.  Practice, Civil, Summary process, Default,
    Continuance, Bond, Judgment, Execution.



Summary Process.  Complaint filed in the Boston Division of
the Housing Court Department on October 11, 2016.

The case was heard by Jeffrey M. Winik, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 25, 2018.

The case was reported by Gaziano, J.


Joshua J. Bone for the tenant.
Eleftherios S. Papadopoulos for the landlord.

_____

[1] Melinda Stewart  vs.  Cambridge Street Realty, LLC.

KAFKER, J.  Melinda Stewart (tenant), a recipient of a United States Department of Housing and Urban Development (HUD) Housing Choice Voucher (Section 8 voucher), fell behind on her rent, and her landlord, Cambridge Street Realty, LLC (landlord), served her with a notice of termination of tenancy (notice to quit) before bringing a summary process eviction action against her in the Boston Division of the Housing Court Department.[2] Following a trial that, without advance notice, occurred on the same day as a hearing on the tenant's motion to vacate a default judgment, the landlord received a judgment of execution and forty-four dollars in back rent.  Although the case was initially stayed after the tenant posted an appeals bond in the amount of forty-four dollars, the Housing Court judge nonetheless allowed the execution to issue on the landlord's representation that the tenant had violated a nonfinancial condition of the bond.  Execution was then again stayed after the tenant filed a G. L. c. 211, § 3, petition with a single justice of this court.

This case presents a number of unresolved questions of law: whether (1) termination of a residential tenancy by a legally

---

[2] After this case was brought, the Housing Court Department was reorganized by statute, and the Boston Division became part of the Eastern Division.  St. 2017, c. 47, § 78.

adequate notice to quit is necessary to confer subject matter jurisdiction on the Housing Court; (2) the judge erred or otherwise abused his discretion when he failed to provide advance notice that he might conduct trial on the same day as a motion hearing on a default judgment and denied a continuance requested under Housing Court Standing Order 1-01 (2001) to a self-represented litigant represented by a limited assistance volunteer attorney who was willing to enter a full appearance; and (3) a judge has the authority to impose a nonfinancial condition on an appeals bond issued under G. L. c. 239, § 5, with respect to an appeal from a judgment for possession of land or tenements.

We hold that a legally effective notice to quit is a condition precedent to a summary process action and part of the landlord's prima facie case but is not jurisdictional. We further explain that the notice to quit was not defective in the instant case. We nonetheless vacate the judgment and remand for a new trial because we hold that the Housing Court judge abused his discretion when, without providing advance notice that he would conduct trial on the same day as the scheduled hearing on the motion to vacate the default, he denied the volunteer attorney's request for a continuance provided by Housing Court Standing Order 1-01. In addition, we hold that the judge lacked statutory authority to impose a nonfinancial condition on the

appeals bond, and we therefore reverse the order of execution arising from the tenant's alleged noncompliance with the appeals bond.

1. <u>Background</u>. a. <u>Standard of review</u>. When reviewing the decision of a trial judge in a summary process action, "we accept [the judge's] findings of fact as true unless they are clearly erroneous," but "we scrutinize without deference the legal standard which the judge applied to the facts" (citation omitted). <u>Andover Hous. Auth</u>. v. <u>Shkolnik</u>, 443 Mass. 300, 306 (2005).

b. <u>Facts and procedural history</u>. The facts, according to the undisputed facts in the record, the parties' joint statement of facts, and the judge's decision below, are as follows. In the summer of 2010, the tenant began to lease an apartment from the landlord. Due to her low income, the tenant qualified to receive a Section 8 voucher administered by the Boston Housing Authority (BHA).[3] The tenant and the landlord entered into a

---

[3] "In the United States Department of Housing and Urban Development (HUD) Housing Choice Voucher Program (Section 8), HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing. The Section 8 program is generally administered by State or local governmental entities called public housing agencies (PHAs). HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the programs. Section 8 housing assistance may be 'tenant-based' or 'project-based.' With tenant-based assistance, [f]amilies select and rent units that meet program housing quality standards. If the PHA approves a family's unit

BHA-provided lease (model lease) and a HUD-approved addendum (HUD addendum). The landlord agreed in the HUD addendum that it would "only terminate the tenancy in accordance with the lease and HUD requirements." These requirements included specific notice provisions. In particular, per the HUD addendum, the landlord had to provide "the tenant a notice that specifies the grounds for termination of tenancy." Additionally, the model lease stated that the landlord "shall" include specific termination language in its termination notice.[4]

The tenant's lease began to run in August 2010, and provided that, after a year, it would automatically renew in successive month-to-month terms, unless the landlord terminated the lease for one of several permissible reasons. The tenant initially lived in the apartment with her son until he was killed in a homicide in 2013. The son's death reduced the

---

and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family." (Quotations and citations omitted.) Figgs v. Boston Hous. Auth., 469 Mass. 354, 355 n.2 (2014). Due to limited funds, PHAs typically maintain a waiting list for Section 8 voucher applicants. 18B D.A. Randall & D.E. Franklin, Municipal Law and Practice § 25.18 (5th ed. 2006).

[4] "The termination notice shall include the following language: 'Your tenancy can be terminated only at the end of the Initial Term or at the end of a Successive Term for other good cause, or during the Initial Term or Successive Term for serious or repeated violations of this Lease, violation of Federal, State or local law. The reason for termination of your Lease is _____.[']"

income available to the tenant. Despite receiving financial support from a rental assistance organization, the tenant began to fall behind on her share of the monthly rent each month starting in February 2015.[5] The landlord sent the tenant numerous "rent reminders" stating the amount of overdue rent each month.

In August 2016, the landlord began the process of evicting the tenant. Through its counsel, the landlord had a constable serve the tenant with a notice to quit on August 31, 2016, informing the tenant that it was terminating her lease for serious and repeated lease violations, specifically, paying her rent after the first of the month, as well as improperly storing items in the building's common areas. The notice to quit demanded that the tenant vacate the premises within thirty days or face eviction.

After the tenant declined to move out by September 30, 2016, the landlord served the tenant with a summary process summons and complaint that set a hearing date of October 20,

---

[5] The landlord and the Boston Housing Authority (BHA) had entered into a "Housing Assistance Payments" contract that required the BHA to pay most of the tenant's rent each month promptly and directly to the landlord. At the time of lease signing, the tenant's total monthly rent was $1,324, with the landlord receiving $1,044 of the rent from the BHA. The tenant's monthly rent increased to $1,500 in June 2016, with her share increasing to $332. The tenant's income at the time of trial was $700 per month.

2016.  The landlord received a default judgment when the tenant did not appear for trial on that date.[6]  The same day, however, the tenant filed a motion to vacate the default judgment on the advice of a clerk at the Housing Court.  The court sent the parties a "Notice of Motion Hearing" informing them that the tenant's motion to vacate the default judgment would be heard on November 10, 2016, which it was.  At the motion hearing, the landlord was represented by counsel, while the tenant engaged a volunteer attorney participating in the Housing Court's "lawyer for a day program" (LDP attorney) on a limited assistance basis to represent her in settlement talks and on the motion.[7]  The court granted the motion to vacate the default and announced that it would conduct a trial on the same day, which it did.

Shortly after the trial commenced, the LDP attorney who had been providing limited representation to the tenant in settlement talks and on the motion to vacate told the judge that she would be willing to enter a full appearance and requested a

_____

[6] The tenant claimed that she inadvertently went to the wrong court room on the original trial date, and that by the time she realized her mistake she had been defaulted.

[7] As discussed infra, while not expressly stated in the record, we infer that the tenant's attorney was participating in the "lawyer for a day" program established by Housing Court Standing Order 1-01 whereby volunteer attorneys provide limited assistance to self-represented parties in the Housing Court.

continuance pursuant to Housing Court Standing Order 1-01.[8]  That standing order provides that if an LDP attorney assisting a pro se litigant in mediation does not enter an appearance but assists the litigant in preparing a motion for a continuance, the "motion shall be allowed if good cause is shown," while if the LDP attorney does enter an appearance, "the litigant shall be entitled to a two (2) week continuance of trial."  Housing Court Standing Order 1-01(5).  After the LDP attorney's motion, the judge declared that, absent a settlement, "the trial's going forward today."  When no settlement was reached, the LDP attorney withdrew her motion for a continuance and submitted her withdrawal of limited appearance, and the tenant went through the trial self-represented.

Judgment entered for the landlord on November 15, 2016.  In his written decision, the Housing Court judge held that the landlord had not proved that the tenant committed a lease violation by improperly storing her personal property.  With

---

[8] The form Notice of Limited Appearance used by the Housing Court instructs attorneys participating in the Housing Court's "lawyer for a day program" (LDP attorneys) to "identify the discrete issues within the event covered by the appearance" by checking one of several boxes.  Here, the tenant's attorney checked the box next to "[m]otion to vacate default judgment," but not the box next to "[m]ediation."  Nonetheless, the LDP attorney had been assisting the tenant in settlement talks that, as she informed the judge, had been proceeding for several hours prior to the trial.  The landlord's settlement demand would have required the tenant to pay the outstanding rent balance and move out within a certain amount of time.

respect to the late payment of rent, the judge found that the outstanding balances due each month were not large, and that the total amount of the rent arrearage was modest. The judge nonetheless held that the tenant's late payments constituted a serious and repeated lease violation that entitled the landlord to recover possession of the premises. The judge ordered execution and damages in the amount of the outstanding rent, forty-four dollars.

The tenant timely appealed from the judgment and filed a motion to waive the statutorily required appeals bond. The judge subsequently held a hearing on the motion to waive the bond at which the landlord was represented by counsel and the tenant was self-represented. The judge issued an "appeal bond order" that declined to waive the bond and ordered it set at $234.51, the judgment amount plus certain costs and fees, which the tenant was to post or have her appeal dismissed. The order also stated that "[a]s a further condition of the bond" the tenant had to pay $332 in monthly use and occupancy to the landlord during the pendency of the appeal, provide the landlord with a key to her apartment, and allow the landlord access to perform repairs on twenty-four hours' advance written notice. The appeal bond order stated that failure to comply with these conditions would entitle the landlord to file a motion to dismiss the appeal. The tenant appealed from the denial of her

motion to waive the bond and the amount of the bond, and a single justice of the Appeals Court affirmed the order, except for reducing the amount of the bond to forty-four dollars, which the tenant posted.

The appeal entered in the Appeals Court in July 2017, and we transferred the case to this court on our own motion in November 2017. The landlord subsequently filed two motions to dismiss the appeal for failure to comply with conditions of the appeals bond.[9] The first of these motions, concerning the tenant's payment of use and occupancy, was denied by the Housing Court judge. The second motion, based on the tenant's alleged refusal to allow the landlord access, was likewise denied by a different judge. Despite denying the motion, however, the judge's order stated that execution would issue if the landlord submitted affidavits averring that the tenant had not permitted the landlord entry on June 15, 2018, to adjust the water pressure.

On June 18, 2018, the landlord submitted two affidavits from its counsel and a contractor alleging that the tenant had interfered with their diagnostic test on the water pressure in

---

[9] The landlord filed two motions to dismiss the appeal before the appeal was entered in the Appeals Court based on the tenant's failure to provide the landlord with keys to her unit and to order a hearing transcript. These motions were either rendered moot or denied.

her bathroom sink.  Execution issued, a notice of levy was set, and the tenant's application to the Housing Court for a temporary restraining order was denied.  On June 25, the day before the levy, the tenant filed her G. L. c. 211, § 3, petition before a single justice of this court, seeking a stay of execution.  The single justice stayed the execution and subsequently issued a reservation and report consolidating the tenant's petition with her pending appeal.

2.  Discussion.  a.  Subject matter jurisdiction.  We first address the tenant's argument that the Housing Court lacked subject matter jurisdiction over her summary process action because the landlord's notice to quit failed to comply with the notice provisions of her lease and thus never terminated her tenancy.  The tenant argues that a defective notice to quit deprives the court of subject matter jurisdiction, and thus she may raise it at any stage of the proceedings, even though she did not raise it in the Housing Court.  See, e.g., Maxwell v. AIG Dom. Claims, Inc., 460 Mass. 91, 99 (2011) ("the question of subject matter jurisdiction may be raised by the parties at any time").  The landlord argues, to the contrary, that the legal adequacy of its notice to quit was not jurisdictional, and that the tenant waived any challenges to that notice by failing to raise them below.  We conclude that a legally adequate notice to quit is not jurisdictional but rather a condition precedent to a

summary process action that is part of the landlord's prima facie case. Consequently, the tenant waived the issue when she failed to object to the adequacy of the notice at trial. Regardless, the notice to quit here was legally adequate.

We start our jurisdictional analysis with the text of the summary process statute, G. L. c. 239. See Northeast Energy Partners, LLC v. Mahar Regional Sch. Dist., 462 Mass. 687, 692 (2012) ("The starting point of our analysis is the language of the statute . . ." [citation omitted]). There is no question that summary process eviction actions generally fall within the Housing Court's jurisdictional grant. See G. L. c. 185C, § 3 (vesting Housing Court with jurisdiction over "all civil actions" arising under G. L. c. 239). See also Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 338 (2016) (observing that G. L. c. 185C, § 3, grants Housing Court jurisdiction to hear summary process evictions). Indeed, hearing eviction actions is an express and essential Housing Court function.

The plain text of the summary process statute, G. L. c. 239, § 1, also defines the role of a notice to quit in the exercise of that jurisdiction. That statute provides in relevant part that "if the lessee of land or tenements or a person holding under him holds possession without right after the determination of a lease by its own limitation or by notice to quit or otherwise . . . the person entitled to the land or

tenements may recover possession thereof under this chapter."
Termination of a lease, by its own terms or by a notice to quit,
is thus a condition precedent to bringing suit.  See Boston v.
Talbot, 206 Mass. 82, 92 (1910) (proper termination is "[o]ne of
the conditions" that must be fulfilled before "summary process
may be maintained").  See also New Bedford Hous. Auth. v. Olan,
435 Mass. 364, 373 (2001) (analyzing termination notice as
"prerequisite to filing suit" that may be waived).

There is a split of authority in the case law of other
States regarding whether a defective notice to quit is
jurisdictional or a condition precedent to bringing suit that
does not deprive the court of jurisdiction.  Compare, e.g.,
Waterbury Twin, LLC v. Renal Treatment Ctrs.-N.E., Inc., 292
Conn. 459, 466 (2009) (defective notice to quit concerns subject
matter jurisdiction), with Sovereen v. Meadows, 595 P.2d 852,
854 n.3 (Utah 1979) (defective notice to quit does not concern
subject matter jurisdiction).  There is also not a great deal of
explanation why different State courts reach the result they do
on the jurisdiction question.  Based on our own analysis of the
legal, practical, and institutional considerations involved, we
conclude that the issue whether a notice to quit is legally
adequate is not jurisdictional.

We begin by recognizing that this is a question properly
within the Housing Court's general subject matter jurisdiction,

and indeed one that draws on the Housing Court's knowledge and expertise.  "Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought" (quotation and citation omitted).  Middleborough v. Housing Appeals Comm., 449 Mass. 514, 520 (2007).  As discussed, a summary process eviction action is clearly a question at the core of the Housing Court statute and the relief that the court provides.

Even where the general subject matter is covered by the statute, however, the party bringing suit must have standing for the court to have subject matter jurisdiction.  See HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 199 (2013) ("standing is a question of subject matter jurisdiction").  The standing requirement exists because "[c]ourts are not established to enable parties to litigate matters in which they have no interest affecting their liberty, rights or property," but rather only those matters in which they have a "definite interest" such that their "rights will be significantly affected by a resolution of the contested point" (citations omitted).  Id. at 199, 200.  In Rental Prop. Mgt. Servs. v. Hatcher, 479 Mass. 542, 546-547 (2018) (Hatcher), we found that a litigant who did not have an ownership, leasehold, or other property interest in the property at issue had no standing to bring a summary process action, and therefore we held that the court lacked subject matter jurisdiction.  Here, by contrast, there is

no dispute that the landlord had such an interest.  An inadequate notice would not deprive the landlord of that interest; rather, it would be a failure of the landlord's prima facie case.  See, e.g., Middleborough, 449 Mass. at 520-521 ("fundability" requirement for administrative permit properly viewed not as "jurisdictional requirement" for appeal from permit denial but as "substantive aspect of . . . prima facie case").  See also Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 57 (2010) (Doe No. 3974) (requirement that board establish residency element of "sex offender" classification "a question of substance, not subject matter jurisdiction").  The landlord here thus has standing.

We also consider the practical and institutional consequences of treating an inadequate notice to quit as jurisdictional.  If jurisdiction were in fact dependent on the adequacy of the notice, the issue would not need to be raised in the first instance in the Housing Court.  See Hatcher, 479 Mass. at 547, quoting HSBC Bank USA, N.A., 464 Mass. at 199 ("whenever a problem of subject matter jurisdiction becomes apparent to a court, the court has 'both the power and the obligation' to resolve it, 'regardless [of] whether the issue is raised by the parties'"); Doe No. 3974, 457 Mass. at 458 ("questions of subject matter jurisdiction may be raised at any time . . . and are not waived even when not argued below" [quotations and

citation omitted]).  This would be inconsistent with both the timely resolution of landlord-tenant disputes and the importance of litigating the issue in the first instance in the Housing Court rather than on appeal.  See Bank of N.Y. v. Bailey, 460 Mass. 327, 333, 334 (2011) (noting that Legislature created Housing Court as "specialized forum" for housing matters, specifically to further "just, speedy, and inexpensive" resolution of summary process cases [citations omitted]).

Accordingly, we make explicit today that a defective notice to quit "represents merely the failure to comply with a condition precedent to suit and cannot properly be said to affect the court's jurisdiction."  170 W. 85th St. Tenants Ass'n v. Cruz, 173 A.D.2d 338, 339 (N.Y. 1991).  See Residential Landlord-Tenant Benchbook 32 (W.E. Hartwell ed., 3d ed. 2013) (notice to quit requirement is not "'jurisdictional' in nature").  To clarify further, the legal adequacy of the notice to quit "is more properly characterized as an element of the landlord's prima facie case, waivable by the tenant, than as a part of the subject matter jurisdiction of the court" (citation omitted).  Priel v. Priel, N.Y. L.J., Mar. 5, 1993, at 25, cols. 3-4 (App. Term Jan. 3, 1992).  Cf. Middleborough, 449 Mass. at 520-521.

Because we conclude that the adequacy of the notice to quit requirement of G. L. c. 239, § 1, is not jurisdictional, and the

issue was not raised below, we therefore decide that the tenant waived the issue of the adequacy of the notice to quit.

b. Legal sufficiency of the notice to quit. Despite concluding that the tenant waived the argument, we nonetheless address the issue whether the landlord substantially complied with the requirements for a legally adequate notice to quit because the issue has been fully briefed and merits clarification. See Olan, 435 Mass. at 372 (despite waiver of tenant's challenge to notice to quit, "[b]ecause there is some uncertainty over the question, because it involves a matter of public interest that is likely to arise in the future, and where the issue has been fully briefed, we will address the issue").

As discussed supra, the lease agreements between the parties contained several provisions concerning termination. Because a lease is a contract, Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 198 (1973), its proper interpretation is a "question of law for the court" (citation omitted). Freelander v. G. & K. Realty Corp., 357 Mass. 512, 516 (1970). Here, we conclude that the landlord substantially complied with the notice requirements imposed by the lease with respect to lease termination.

Our case law on the adequacy of a notice to quit has long distinguished between minor errors of technicality or form and material errors of substance. See Torrey v. Adams, 254 Mass.

22, 25-26 (1925) ("Technical accuracy in the wording of such a notice is not required, but it must be so certain that it cannot reasonably be misunderstood . . ."). To be defective such that it fails to terminate a lease, a notice to quit must involve a material error or omission, i.e., a defect that has some meaningful practical effect. Compare, e.g., Steward v. Harding, 2 Gray 335, 335 (1854) (notice defective where it failed to indicate day on which tenant was to quit), with Clark v. Keliher, 107 Mass. 406, 409 (1871) (in absence of uncertainty, notice not defective despite mistake in name of tenant). In other words, substantial compliance with statutory or contractual notice to quit requirements is necessary to effect lease termination, but minor errors or omissions will not render the notice to quit defective such that a summary process action cannot be maintained. Cf. Bank v. Thermo Elemental, Inc., 451 Mass. 638, 670 (2008) ("[m]inor inaccuracies, omissions, and errors" in notice required prior to commencing suit under environmental protection statute does not require dismissal of action).

Here, as discussed, the landlord agreed in paragraph 13(e) of the model lease that it "shall" include specific termination language in its notice to quit. This required language, however, did not accurately convey the landlord's termination

options under the lease.[10]  While the landlord failed to include the specific language, it did more accurately state, "Pursuant to Paragraph 13 of your Lease, you understood and agreed that the owner could terminate the tenancy for serious or repeated violations of lease, and/or other good cause."

This does not conclude our analysis.  Per the HUD addendum, the landlord had to provide "the tenant a notification that specifies the grounds for termination of tenancy."[11]  A notice to quit may still be defective if it fails to comply with the

---

[10] The verbatim language required the landlord to represent that the lease may be "terminated only . . . during the . . . Successive Term for serious or repeated violations" of the lease or violations of State and Federal law, and may be terminated only "at the end of a Successive Term for other good cause" (emphases added).  But paragraph 13(a)(8) of the model lease also entitled the landlord, under certain circumstances, to terminate the lease "[d]uring . . . any Successive Term . . . for 'other good cause'" (emphasis added).  While that paragraph restricted the types of "other good cause" terminations available to the landlord, paragraph 13(c) went on to provide that the "other good cause" situations explicitly provided in the lease were "non-exclusive" examples that "shall in no way be construed as a limitation on the application of 'other good cause' to situations not included" in the lease.  The verbatim notice to quit language required by the model lease therefore required the landlord to represent that its termination options were more limited than actually was permitted under the contract.

[11] This paragraph closely follows 24 C.F.R. § 982.310(e)(1) (2016), the HUD regulation -- binding on the landlord by virtue of paragraph 8(a) of the HUD addendum -- whereby a landlord of a tenant holding a Section 8 voucher "must give the tenant a written notice that specifies the grounds for termination of tenancy during the term of the lease.  The tenancy does not terminate before the owner has given this notice, and the notice must be given at or before commencement of the eviction action."

lease's requirement that it be specific. See, e.g., Residential Landlord-Tenant Benchbook, supra at 8 (collecting cases where notice was insufficiently specific). See also Dejan vs. Storms, Mass. Hous. Ct., No. 12H84SP0001030 (Boston Div. Apr. 13, 2012) (dismissing summary process action where notice to quit lacked "sufficient clarity and specificity" required by HUD-mandated lease). Here, the three-page notice to quit gave the tenant thirty days' advance notice and knowledge that her tenancy was terminating at the end of the month for detailed conduct that violated certain accurately referenced lease provisions. The notice to quit thus complied with the contractual requirement that it be specific.

Under these circumstances, we conclude that the landlord substantially complied with its notice obligations for purposes of lease termination. Therefore, even if the issue had not been waived, we would have agreed with the Housing Court judge that the notice to quit was legally sufficient for the landlord to maintain its summary process action.

c. Notice and opportunity to be heard. Although we conclude that the court properly had subject matter jurisdiction over the summary process eviction, we nonetheless must consider whether, as the tenant argues, she was deprived of her right to a meaningful opportunity to be heard. We conclude that the lack of any advance notice of trial to a self-represented party,

combined with an improper denial of a continuance provided by a Housing Court standing order that would have allowed the self-represented party to obtain full representation at a trial to be held two weeks later, constituted an abuse of discretion.  We therefore vacate the Housing Court judge's judgment of November 15, 2016, and remand for a new trial.

The Housing Court Standing Orders require that "each judge . . . must, consistent with applicable statutes and the rules of court, exercise sound judgment in a manner that affords the parties a fair opportunity to develop and present their claims to the court."  Housing Court Standing Order 1-04(I) (2004).  In the Housing Court, where self-representation is common, and thus the potential for confusion is high, this can be particularly challenging.  See Hatcher, 479 Mass. at 554 n.11 (in 2017, ninety-three percent of tenants and thirty-three percent of landlords in summary process housing cases were self-represented); I.S.H. v. M.D.B., 83 Mass. App. Ct. 553, 561 (2013) ("our courts have recognized that self-represented litigants must be provided the opportunity to meaningfully present claims and defenses").  The volunteer "lawyer for a day" program created by Housing Court Standing Order 1-01 seeks to address the challenge and promote the fairness of the process by allowing self-represented parties to obtain limited representation from volunteer attorneys.

In the instant case, the tenant's ability to have a fair opportunity to present and develop her claims or defenses was compromised when she did not receive any notice that a trial on the merits would occur until the very day -- indeed the very afternoon -- of the trial, November 10, 2016.  Without further guidance from the judge, notification of the original trial date of October 20, 2016, did not provide adequate notice that trial would occur immediately following the vacating of the default judgment on a different day, weeks later.  Cf. Konstantopoulos v. Whately, 384 Mass. 123, 135 (1981) ("oral notice given one and one-half hours prior to the revocation hearing . . . did not comport with a rudimentary standard of due process"); Adoption of Zev, 73 Mass. App. Ct. 905, 906 (2009) (court's unannounced conversion of pretrial conference concerning termination of parental rights into trial on merits on same day violated parent's due process rights).[12]

_____

[12] As mentioned, the notice of the hearing on the tenant's motion to vacate the default judgment did not indicate that, if the motion were allowed, the tenant should be prepared to go to trial the same day.  Neither the Uniform Summary Process Rules nor the Housing Court Standing Orders provides for notice of a new hearing date to a defendant who has removed a default judgment.  The Uniform Summary Process Rules "provide an automatic hearing date that can be predetermined and communicated to the defendant with the summons and complaint." Commentary to Rule 2 of the Uniform Summary Process Rules, Massachusetts Rules of Court, at 477 (Thomson Reuters 2018). See Rule 2(c) of the Uniform Summary Process Rules (1993) (scheduling hearing for second Thursday after entry date of

Although not specifically addressed by the parties, the tenant's ability to present a meaningful defense was further compromised by the judge's denial of a continuance, requested pursuant to the court's standing order, which forced the tenant immediately to proceed to trial pro se. As discussed, under certain circumstances, such a continuance is mandatory under the Housing Court Standing Orders. Specifically, Housing Court Standing Order 1-01(5) provides that if a pro bono attorney in the "lawyer for a day program" who is "assisting or representing a pro se litigant in mediation does enter an appearance in that litigant's action, the litigant <u>shall</u> be entitled to a two (2) week continuance of trial" (emphasis added). See Housing Court Standing Order No. 1-04(V) (same). The standing order also provides separately that, if the LDP attorney assisting the litigant does not enter an appearance, a motion for continuance "shall be allowed if good cause is shown." Housing Court Standing Order 1-01(5).

---

summary process action); Housing Court Standing Order 1-04(V) (2004) (declining to issue scheduling orders in summary process cases and instead referring parties to Uniform Summary Process Rules to determine hearing date). We recognize, however, that summary process proceedings are intended to be "just, speedy, and inexpensive." Rule 1 of the Uniform Summary Process Rules (1980). Therefore, to prevent unnecessary delay and to provide proper notice, the Housing Court could, for example, state on its notice of motion hearing that trial may occur on the same day if the default is vacated.

Here, the lawyer, who was apparently acting pursuant to the lawyer for a day program, had filled out a notice of limited appearance form on which she checked the box indicating that she was representing the tenant on the motion to vacate the default. She had not, however, checked a different box on the form entitled "Mediation." She had nonetheless been involved in settlement talks and had communicated the existence of these talks to the judge. She expressly stated to the judge, "[W]e are requesting a continuance under the standing order, and we're willing to enter a full appearance." Although the form and her request were not perfectly clear, we infer from them that she was referencing and relying on the provision of standing order 1-01 providing for the mandatory two-week continuance.

The judge nonetheless rejected the request, stating that he would not grant any continuance.[13] The attorney then withdrew

---

[13] The judge insisted that the tenant either accept the landlord's settlement offer or face trial, apparently because he did not want to inconvenience the landlord's counsel and witnesses:

> "I'll give you [(the tenant's attorney)] two minutes to talk to your client. If not, I'm proceeding with the trial. I'm not going to have these people wait here till four o'clock today, and at four o'clock you come in saying someone will enter an appearance when we're on for . . . trial. So the trial's going forward today. . . . I will give you a chance to communicate with the tenant as to whether she wants to resolve it. If not, I'm proceeding with the trial."

both the continuance motion and her limited appearance.[14]  The tenant then immediately had to proceed to trial pro se against the represented landlord.

We conclude that the continuance should have been granted in the instant case.  It appears to have been mandatory pursuant to the standing order.  The purpose of the continuance in the standing order is to facilitate representation at trial.  Although the "mediation" box was not checked, the attorney was assisting in settlement talks and the judge was aware of that assistance.  Even if the continuance were not mandatory, it was error to reject the request, as there was good cause shown because the judge's failure to grant the continuance significantly compromised the tenant's ability to receive "a fair opportunity to develop and present [her] claims to the court."  Housing Court Standing Order 1-04(I).[15]

---

[14] Housing Court Standing Order 1-10 (2010) provides that "an attorney shall withdraw" after "completion of the representation within the scope of a limited appearance" (emphasis added).  After vacating the default judgment, therefore, the tenant's attorney was obliged to withdraw.

[15] While the decision "[w]hether a continuance ought to be granted commonly rests in the discretion of the trial tribunal" (citation omitted), Soe, Sex Offender Registry Bd. No. 252997 v. Sex Offender Registry Bd., 466 Mass. 381, 392 (2013), we have found the denial of a motion for a continuance improper where "good cause" existed for its granting, see Monahan v. Washburn, 400 Mass. 126, 129 (1987).

In sum, the combination of requiring a self-represented party to proceed immediately to trial without advance notice and denying an apparently mandatory continuance that would have provided the party with counsel at such a trial only two weeks later constituted an abuse of discretion that deprived the self-represented party of a meaningful opportunity to develop and present her claims as provided by the Housing Court Standing Orders.  See Housing Court Standing Order 1-04(I).  We thus vacate the judgment and remand for a new trial.

d.  Appeals bond.  Having decided that the Housing Court judge erred, we must consider the matter reported to us by the single justice concerning the tenant's petition for relief under G. L. c. 211, § 3, from the order of execution that the judge issued after finding that the tenant had violated a condition of her appeals bond.  Because we conclude that the judge exceeded his authority when he placed a nonfinancial condition on the appeals bond, and then ordered an execution of judgment based on his determination that the tenant had violated the nonfinancial condition of the bond, we grant the requested relief and reverse the execution of judgment ordered by the judge on June 18, 2018.[16]

---

[16] The single justice reported the petition as one seeking relief from the Housing Court judge's June 25, 2018, order denying the tenant's application for a stay of levy.  The tenant

To obtain review under G. L. c. 211, § 3, a petitioner must face an "irreparable loss of significant rights" that cannot be remedied in "the normal course of trial and appeal" (citation omitted).  DuPont v. Superior Court, 401 Mass. 122, 123 (1987). Given the unusual procedural posture of this case, and the novel legal issue presented, we conclude that the requirements of G. L. c. 211, § 3, are met in the instant case, and that the petitioner is entitled to relief.

Here, the tenant complied with the normal procedure of the appeals bond statute, G. L. c. 239, § 5, and posted the required bond.[17]  But the judge then ordered an execution of judgment based on his determination that the tenant had violated a condition of the bond requiring the tenant to grant access to the landlord to make repairs.[18]  This occurred while the appeal

---

properly moved first for a stay in the Housing Court under Mass. R. A. P. 6 (a) (1), as appearing in 454 Mass. 1601 (2009).  We consider the tenant's petition to challenge the validity of the underlying execution issued on June 18 as a result of the June 12 order.

[17] The summary process appeals bond statute requires a defendant who has lost a summary process case to post bond as a condition of prosecuting an appeal.  G. L. c. 239, § 5 (c).  An indigent tenant with a meritorious appeal can move in the Housing Court for an appeals bond waiver.  Id. at § 5 (e).  A tenant can further appeal from a denial of a waiver or the amount of any periodic payments to a single justice of the Appeals Court.  Id. at § 5 (f).

[18] The landlord argues that the tenant waived her challenge to the appeals bond by failing to raise it when she appealed

of the summary process case was pending in this court. Unless specifically authorized, the judge had an obligation to refrain from issuing an order that would "render the appeal moot or otherwise affect the issues before the appellate court." Springfield Redev. Auth. v. Garcia, 44 Mass. App. Ct. 432, 435 (1998). See Rule 11(b) of the Uniform Summary Process Rules (1980) (applying Mass. R. Civ. P. 62 [d], 365 Mass. 829 [1974], requiring automatic stay of execution of judgment pending appeal, to summary process actions). Here, the judge did not have the authority to order execution of judgment.

Specifically, we hold that the plain text of the appeals bond statute does not authorize the inclusion of nonfinancial conditions on the bond and the execution of judgment based on the failure to comply with such nonfinancial conditions. The statute states that "the defendant shall . . . give bond in a

---

from the denial of the bond waiver and the amount of the bond to the single justice of the Appeals Court. But it is not clear that the tenant could have raised her challenge when the bond was first set, because G. L. c. 239, § 5 (f), provides that a tenant may only challenge the amount of the bond or any periodic payments and expressly limits the power of a single justice reviewing the terms of the bond to modifying factual findings or reducing or rescinding a "bond, deposit or periodic payment." Regardless, as the nonfinancial bond condition exceeds the statutory authority of the judge, and thus implicates subject matter jurisdiction, we may consider it now. See Maxwell v. AIG Dom. Claims, Inc., 460 Mass. 91, 99 (2011) (challenge to subject matter jurisdiction can be raised at any point in proceedings). See also Ryan v. Kehoe, 408 Mass. 636, 641 (1990) ("The statutory grant of jurisdiction to the Housing Court limits the court's equity powers to enumerated statutory claims . . .").

sum as the court orders, <u>payable</u> to the plaintiff," in an amount "conditioned to <u>pay</u> to the plaintiff . . . all rent accrued at the date of the bond, all intervening rent, and all damage and loss which the plaintiff may sustain" while the appeal is pending (emphasis added).  G. L. c. 239, § 5 (<u>c</u>).  By its plain text, the statute is clear that a judge may only impose financial obligations on the appeals bond.  See <u>Camargo's Case</u>, 479 Mass. 492, 498 (2018) (legislative intent may be clear from "plain and unambiguous" language of statute).  The statute also provides for an expedited process, including review by a single justice of the Appeals Court, and dismissal of the case when these financial conditions are not met.[19]  Adding nonfinancial conditions to the appeals bond process, and allowing execution of judgment based on the failure to comply with such conditions,

---

[19] The statute permits dismissal of an appeal by the trial court only when a tenant fails to post the initial appeals bond or use and occupancy payment.  See G. L. c. 239 § 5 (<u>h</u>) ("the appeal from the judgment shall be dismissed" within five days if, after seeking review of amount of bond or periodic payments from single justice of Appeals Court, tenant fails to file "the amount of bond, deposit or periodic payment").  See also <u>PGR Mgt. Co</u>. v. <u>Credle</u>, 427 Mass. 636, 639 (1998) (as provided by statute, tenant's appeal properly dismissed through her failure to file appeals bond).  Conversely, "if the defendant posted bond after losing an appeal of the trial court's denial of waiver of that bond, execution would continue to be unavailable pending the completion of the appeal of the underlying judgment under Rule 62(d)."  Commentary to Rule 13 of the Uniform Summary Process Rules, Massachusetts Rules of Court, at 481 (Thomson Reuters 2018).  Here, the tenant does not challenge the propriety of the financial conditions on the bond.

transforms the limited nature and purpose of the appeals bond statute, generating the type of overlapping trial and appellate court processes and confusion present here.

The landlord raises the practical concern that, in the absence of nonfinancial conditions on an appeals bond, the landlord would have "no ability" to maintain its property during the pendency of an appeal.  This is not the case.  The proper procedure for the landlord to seek this variety of relief would have been an injunction seeking interlocutory relief while the appeal was pending.[20]  Such an injunction could have provided the landlord with access to the apartment without an automatic execution.  It would have allowed the landlord to protect its property and the trial court to act appropriately without disrupting the case on appeal.  Indeed, while the appeal has been pending in this court, the landlord has followed this very

---

[20] If properly requested, an injunction, as the landlord conceded at oral argument, would be available in these circumstances.  See G. L. c. 185C, § 3 (vesting Housing Court with equitable jurisdiction); G. L. c. 231, § 117 (Housing Court may make "proper interlocutory orders, pending . . . appeal," including injunctions); Rule 9 of the Uniform Summary Process Rules (1980) (equitable relief available in summary process actions); New Bedford Hous. Auth. v. Olan, 435 Mass. 364, 375 (2001) (Sosman, J., concurring) (observing that preliminary injunctions are available under Rule 9 of Uniform Summary Process Rules "to prevent the ongoing harm of violence or threatened violence on public housing premises"); C.F. Downing, Residential and Commercial Landlord-Tenant Practice in Massachusetts § 9.8.5 (3d ed. 2016) (describing process for landlords to obtain injunctions).

course and obtained an injunction requiring the tenant to permit the landlord access to the apartment to make repairs.

We therefore hold that the Housing Court judge's order of execution of judgment for failure to comply with a nonfinancial condition of the bond was improper.  Accordingly, we reverse the June 18, 2018, order of execution.[21]

3.  <u>Conclusion</u>.  For the reasons discussed, we vacate the judgment of November 15, 2016, and remand for a new trial. Additionally, we reverse the June 18, 2018, order of execution.

<u>So ordered</u>.

---

[21] We thus do not reach the tenant's due process argument that she should have received a prior adversary hearing to determine noncompliance with the appeals bond condition.  We deny the landlord's request for attorney's fees because the tenant's case is not frivolous.