NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

21-P-1147                                              Appeals Court

INLAND COMMERCIAL REAL ESTATE SERVICES, LLC  vs.  ASA EWC, LLC.[1]

No. 21-P-1147.

Worcester.     March 3, 2023. – June 30, 2023.

Present:  Wolohojian, Shin, & Hodgens, JJ.


Real Property, Lease.  Contract, Lease of real estate, Performance and breach.  Damages, Breach of contract. Landlord and Tenant, Rent.  Summary Process, Notice to quit.  Practice, Civil, Summary process.



Summary Process.  Complaint filed in the Superior Court Department dated May 20, 2021.

The case was heard by William J. Ritter, J.


Howard B. D'Amico for the defendant.
Ryan K. O'Hara (Christopher D. Pierson also present) for the plaintiff.


SHIN, J.  Inland Commercial Real Estate Services, LLC (Inland), filed a summary process action in the Superior Court against its commercial tenant, ASA EWC, LLC (EWC), seeking

---

[1] Doing business as European Wax Center.

unpaid rent and possession of the leased premises. After a jury-waived trial, an amended judgment entered in favor of Inland awarding both damages and possession. EWC appeals, arguing that shutdown orders issued by the Governor during the COVID-19 pandemic, which caused a three-month closure of EWC's business, frustrated the purpose of the lease. As a result, EWC argues, it should not be held liable for the rent that it failed to pay during the closure period, and Inland should not have been awarded possession because the notice to quit included a demand that EWC pay the rent owed during the closure period. We affirm.

Background. On September 8, 2016, EWC entered into a commercial lease with Inland for the operation of a "European Wax Center" business at Inland's shopping center property in Shrewsbury. The lease had a term of ten years, with monthly minimum rent ranging from $6,260 to $7,011.20, and options for two five-year renewals.

In early March 2020, the Governor declared a state of emergency in Massachusetts because of the outbreak of COVID-19. On March 23, 2020, the Governor issued COVID-19 Order No. 13, which required all nonessential businesses to "close their physical workplaces and facilities . . . to workers, customers, and the public as of 12:00 noon on March 24, 2020." Order Assuring Continued Operation of Essential Services in the

Commonwealth, Closing Certain Workplaces, and Prohibiting Gatherings of More Than 10 People, COVID-19 Order No. 13 (Mar. 23, 2020). As mandated, EWC closed its in-person business operations on March 24 and remained closed as several successive orders extended the restrictions. Finally, on June 19, 2020, the Governor issued COVID-19 Order No. 40, allowing businesses like EWC's to reopen to the public on June 22, 2020. EWC resumed its in-person operations by July 2020.

EWC failed to make any payments toward two quarterly water charges and its rent obligations for March through September 2020. On September 1, 2020, Inland sent EWC a "Five (5) Day Notice" (notice to quit) informing EWC that it owed $55,531.66 under the lease. This amount included the rent for the three months during which the COVID-19 shutdown orders were in place. The notice to quit stated that, unless EWC paid the full amount due within five days of service, Inland was entitled to terminate EWC's right to possession.

Following receipt of the notice to quit, EWC made one payment of $7,895.15 in late September 2020. On March 10, 2021, Inland sent another notice, this time terminating EWC's tenancy for nonpayment of rent. At the time of trial in September 2021, EWC remained in possession of the premises but had made only one more payment after September 2020, which did not bring the rent current.

EWC raised various affirmative defenses in response to Inland's summary process complaint, including frustration of purpose and failure to give legally sufficient notice before terminating the lease.  At the close of the jury-waived trial, the judge found that there was no frustration of purpose, that the notice to quit was valid, and that Inland had made a prima facie case for possession.  An amended judgment entered awarding Inland possession and $86,841.64 in damages, which included the amount of rent that EWC owed for the three months in question.

Discussion.  "When reviewing the decision of a trial judge in a summary process action, 'we accept [the judge's] findings of fact as true unless they are clearly erroneous,' but 'we scrutinize without deference the legal standard which the judge applied to the facts.'"  Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018), quoting Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005).

1.  Damages.  EWC argues that the damages award should be reduced because the COVID-19 shutdown orders and resulting economic repercussions for EWC's business frustrated the purpose of the lease, thereby discharging EWC's obligation to pay rent from March 24, 2020, through June 22, 2020.  We recognize that the COVID-19 pandemic created enormous hardships for many, businesses and individuals alike.  Nevertheless, we agree with the judge that the shutdown orders did not give rise to a valid

frustration of purpose defense so as to excuse EWC from performing under the lease.

The doctrine of frustration of purpose excuses performance under a contract in limited circumstances "where unanticipated supervening events require it."  Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 150 (2023).  Specifically, "[w]here . . . a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged," unless the contract provides otherwise.  Chase Precast Corp. v. John J. Paonessa Co., 409 Mass. 371, 375 (1991), quoting Restatement (Second) of Contracts § 265 (1981).  For the doctrine to apply, the purpose that is frustrated "must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense."  Le Fort Enters., Inc., supra at 161, quoting Restatement (Second) of Contracts § 265 comment a.  The doctrine is construed narrowly "so as to preserve the certainty of contracts," and the party asserting frustration of purpose as a defense bears the burden of establishing it.  Le Fort Enters., Inc., supra at 151, quoting 17A Am. Jur. 2d Contracts § 641 (2022).

In the context of the COVID-19 pandemic, the vast majority of courts to have considered frustration of purpose have declined to apply the doctrine to temporary business closures caused by government shutdown orders.  See, e.g., SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC, 87 Cal. App. 5th 882, 895 (2023); Critzos v. Marquis, 256 Md. App. 684, 700-701 (2023).  See also Highlands Broadway OPCO, LLC v. Barre Boss LLC, 2023 COA 5, ¶19 (Colo. App. 2023) (collecting cases).[2]  In reaching that result, courts have looked to the duration of the closure, the length of the lease, how far into the lease term the closure occurred, and whether the tenant could have reopened its business once the COVID-19 restrictions were lifted.  See 9795 Perry Highway Mgt., LLC v. Bernard, 273 A.3d 1098, 1106-1107 (Pa. Super. 2022) (no substantial frustration where closure was "relatively short-term," occurred more than two years into lease, and tenants "could have reopened, albeit at a reduced capacity," in June 2020 had they not vacated).  Also relevant is whether the tenant remained in possession of the premises during the closure period, see SVAP III Poway Crossings, LLC, supra at 891-892; Fitness Int'l, LLC v. National Retail Props., LP, 524 P.3d 1057, 1065 (Wash. Ct. App. 2023), and whether the tenant

---

[2] EWC heavily relies on a Superior Court judge's contrary decision in UMNV 205-207 Newbury, LLC vs. Caffé Nero Ams., Inc., Mass. Sup. Ct., No. 2084CV01493-BLS2 (Suffolk County Feb. 8, 2021), but that decision is not binding precedent.

could have used the premises for business uses not barred by the shutdown orders, see AGW Sono Partners, LLC v. Downtown Soho, LLC, 343 Conn. 309, 336 (2022) (lease terms, which allowed takeout and outdoor dining, did not "render the lease agreement valueless in light of the executive orders" barring indoor dining); Critzos, supra at 699 (similar); Fitness Int'l, LLC, supra at 1064 ("In leasing, the frustration defense is unavailable if a lease allows the tenant to put the premises to another use").

Here, EWC has not shown that the temporary closure caused by the pandemic substantially frustrated the principal purpose of the lease. EWC was already over three years into the ten-year lease when the Governor issued the first shutdown order. EWC was forced to close its in-person operations for three months, a relatively short time compared to the overall lease term, during which it remained in possession of the premises and had the ability to sell some goods. Because the closure was temporary and occurred well into the lease term, and EWC was able to resume operations soon after, EWC has not established that the purpose of the lease was so frustrated that the transaction between the parties "make[s] little sense." Le Fort Enters., Inc., 491 Mass. at 161, quoting Restatement (Second) of Contracts § 265 comment a. See SVAP III Poway Crossings, LLC, 87 Cal. App. 5th at 895 (temporary closure caused by COVID-19

shutdown orders did "not amount to the kind of complete frustration" of long-term lease "required for the doctrine to apply").  Cf. Le Fort Enters., Inc., supra at 162-163 (frustration of purpose did not excuse defendants' obligations to make payments on promissory note executed nineteen months before start of pandemic, despite economic hardships created by shutdown orders).

We are not persuaded by EWC's contention that the shutdown orders caused a "temporary" frustration of purpose so as to excuse EWC from paying rent during the period that the orders were in effect.  The frustration of purpose doctrine is intended to address the circumstance where an unanticipated event entirely or substantially destroys the overall purpose of the contract, "thus destroying the value of performance"; ordinarily therefore, the legal effect of a successful frustration defense is that "the parties are excused from further performance." Chase Precast Corp., 409 Mass. at 374.  Cf. SVAP III Poway Crossings, LLC, 87 Cal. App. 5th at 896 (because frustration of purpose is available only where value of contract has been "totally or substantially destroyed" and counterperformance is no longer valuable, successful assertion of defense "compels the termination of the contract" under California law).  But here, EWC does not seek to be excused from further performance.  Quite to the contrary, EWC continued to operate its business at the

premises once the COVID-19 restrictions were lifted and then challenged Inland's claim for possession, demonstrating that the purpose of the lease was not destroyed.

It is true, as EWC points out in a postargument letter, that the Supreme Judicial Court has said, in dicta, that "the frustration of purpose defense can be temporary." Le Fort Enters., Inc., 491 Mass. at 161. But in that situation, "the defense will suspend, rather than discharge, a duty to perform unless the party's 'performance after the cessation of the . . . frustration would be materially more burdensome than had there been no . . . frustration'" (emphasis added). Id., quoting Restatement (Second) of Contracts § 269. Thus, even if EWC could show that the purpose of the lease was temporarily frustrated, the temporary frustration would have merely suspended, not discharged, EWC's obligation to pay rent during the closure period. See Restatement (Second) of Contracts § 269 comment a ("When the circumstances giving rise to the . . . frustration cease to exist, [the party] must then perform").

2. Possession. The preceding discussion disposes of EWC's argument that the notice to quit was defective because it included a demand that EWC pay the three months of rent owed during the closure period. Because the frustration of purpose doctrine did not excuse EWC from paying rent for those three months, there was no error in the notice to quit, nor is there

any evidence that EWC was misled by the notice.  See <u>Cambridge St. Realty, LLC</u>, 481 Mass. at 130 ("To be defective such that it fails to terminate a lease, a notice to quit must involve a material error or omission, i.e., a defect that has some meaningful practical effect"); <u>Rockport Schooner Co</u>. v. <u>Rockport Whale Watch Corp</u>., 58 Mass. App. Ct. 910, 911 (2003) ("a notice to quit may be rendered invalid by false or misleading statements").  We add that EWC cites no authority to support its suggestion that a landlord must anticipate a tenant's affirmative defenses, and identify or account for them in the notice to quit, in order for the notice to be deemed valid.

<u>Amended judgment affirmed</u>.