NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-107

CMJ MANAGEMENT[1]

vs.

DORIS RODENSKY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a summary process bench trial in the Housing Court, judgment entered awarding possession to CMJ Management (landlord or plaintiff). Doris Rodensky (tenant or defendant) appeals from the judgment and an order denying her subsequent motion to alter or amend the judgment, arguing that the notice to quit mischaracterized her son as a "guest," that the son's alleged assault of the landlord's employee therefore cannot be a basis for termination of the tenancy, and that any other reasons for termination were not included in the notice to quit and accordingly were improperly considered by the judge. We affirm.

---

[1] As agent for the Village at Fawcett's Pond.

On April 21, 2024, the tenant's son, who does not live in the apartment, struck the "maintenance supervisor," who lives in an adjacent apartment, in the face, knocking him to the ground, and then hit him again during the ensuing struggle.[2] The supervisor suffered a concussion, went to the hospital in an ambulance, reported the incident to the police, and obtained a G. L. c. 258E harassment prevention order. Immediately after the incident, the son entered the tenant's apartment, where he was subsequently arrested.

Four days later, on April 25, 2024, the landlord served the tenant with a notice to quit, terminating the tenancy effective June 1, 2024. The lease requires that any notice of termination delivered to the tenant "state the grounds for termination with enough detail for the Tenant to prepare a defense." The detailed notice based termination on the physical assault and the harassment prevention order, then specifically cited paragraph 23(c)(6) of the lease. Paragraph 23(c)(6) permits termination of the lease because of "criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control" that "threatens the health, safety, or right to peaceful enjoyment of the premises by other

_____

[2] The incident occurred while the tenant's son was at the plaintiff's property.

2

residents (including property management staff residing on the premises)."

Following a summary process bench trial, final judgment issued "for the [p]laintiff for possession" of the premises. The tenant then filed a motion to alter or amend the judgment and the same judge denied that motion.

"When reviewing the decision of a trial judge in a summary process action, we accept [the judge's] findings of fact as true unless they are clearly erroneous, but we scrutinize without deference the legal standard which the judge applied to the facts" (quotations and citation omitted). Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018).

The notice to quit provided to the tenant was "legally adequate." Cambridge St. Realty, LLC, 481 Mass. at 130. For a notice to be defective, it "must involve a material error or omission, i.e., a defect that has some meaningful practical effect." Id. Additionally, where (as here) a lease provides a requirement that a notice provide specificity for the grounds for termination, the notice must comply with that requirement to be effective. See id. at 131. Here, the notice informed the tenant that her lease would terminate more than thirty days later, described the incident causing termination as an "unprovoked attack" by the son on the landlord's employee while

3

on the property, referenced that there was a tenant-guest relationship between the tenant and the son, and recited the language from the lease authorizing termination under these circumstances. Thus, the notice's recitation of the relevant conduct, identification of the parties, and connection of those to the appropriate lease provision satisfied the lease's requirement that the landlord "state the grounds for termination with enough detail for the Tenant to prepare a defense." The notice was more than adequate. See id. at 132 (holding notice to terminate United States Department of Housing and Urban Development-mandated lease addendum effective where notice "detailed conduct that violated certain accurately referenced lease provisions").

Furthermore, the judge's finding that the son's conduct as alleged in the notice violated "Paragraph 23(c)(6) of the [tenant]'s lease" and that the landlord had therefore "established its case for possession of the premises" was correct, based on subsidiary findings of fact which were not clearly erroneous. The notice to quit and the judge's decision based termination on lease paragraph 23(c)(6), which authorizes termination for "criminal activity by . . . a guest or another person under the tenant's control" that "threatens the health, safety, or right to peaceful enjoyment of the premises by other

4

residents (including property management staff residing on the premises)."[3]

The judge credited the witnesses' testimony that the son would "go[] to the [tenant]'s apartment almost every day," that the son hit the maintenance supervisor twice, and that the maintenance supervisor resides in an apartment on the premises. Accepting these facts as true, see Cambridge St. Realty, LLC, 481 Mass. at 123, the judge correctly concluded that the lease permitted termination pursuant to paragraph 23(c)(6). We are unconvinced by the tenant's argument that her son was not a guest, but regardless, the judge's decision clearly and accurately rested on the relationship between the tenant and her son, the son's conduct, and the provisions of the lease authorizing termination under those circumstances. Thus, the

---

[3] The lease, as a "Model Lease For Subsidized Programs," derives its termination provisions from 42 U.S.C. § 1437d(l), under which a "person under the tenant's control" refers to a person to whom "the tenant has permitted access to the premises" (citation omitted). Department of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002).

judgment awarding possession to the landlord was correct.[4]

        <u>Judgment affirmed</u>.

        <u>Order denying motion to alter or amend affirmed</u>.

        By the Court (Neyman, D'Angelo & Allen, JJ.[5]),

*Paul Little*

        Clerk

Entered: January 13, 2026.

---

[4] Because we hold the judge's order was proper on the grounds stated above, we need not and do not address the application of the community rules and regulations to the lease termination.

[5] The panelists are listed in order of seniority.